**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Pamela Alton

     v.                                    Civil No. 14-cv-41-LM
                                             Opinion No. 2015 DNH 044
Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Pamela Alton moves to reverse the Acting Commissioner's decision to deny her application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, this matter is remanded to the Acting Commissioner for further proceedings consistent with this order.

**Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions).  However, the court "must uphold a denial of social security . . . benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

## Background

The parties have submitted a Joint Statement of Material Facts (document no. 16).  That statement is part of the court's record and will be summarized here, rather than repeated in full.

Born in 1972, Pamela Alton began suffering from depression and anxiety as a teenager.  While in college, Alton was admitted to a hospital for mental illness.  At the age of 27, Alton started abusing alcohol.  Thereafter she became homeless.  At her hearing, Alton testified that she abused alcohol "to numb; to run away; to hide."  Administrative Transcript (hereinafter "Tr.") 88.

In April 2003, at the age of 30, Alton was hospitalized and diagnosed with severe recurrent major depression.  Upon admission to the hospital, Alton stated that she had abused alcohol in the past but had been sober for the last several months.  Contemporaneous testing showed no alcohol in her blood.

In July 2003, Alton was hospitalized because she had "escalating feelings that she could not maintain safety, [and was] thinking of many ways to harm herself." Tr. 892. Alton again reported that she had abused alcohol in the past, but denied current abuse. Contemporaneous testing again showed no alcohol in her blood. In a discharge note, one of her treating physicians wrote that

> [w]hile the patient was felt to be depressed, this
> felt to be somewhat manipulative on the patient's
> part. Staff worked with the patient trying to get
> plans in place, and additional information from the
> shelter she was at was obtained, indicating that she
> had abused alcohol, broken several rules, and was felt
> to be not motivated to be helping herself.

Tr. 894-95.

In January 2004, Alton was again hospitalized for depression and suicidal thoughts. Her treating physician wrote that the "[g]oal of this admission [was] to provide [Alton with] a safe environment to contain her suicidal [thoughts]." Tr. 953.

At her hearing, Alton testified that between 2005 and 2008 she was abusing alcohol, but that there were several periods during that time when she was able to become sober and maintain sobriety for up to four months. She testified that during those periods of sobriety she was "a lot healthier . . . . was able to do a lot more. . . . could cook and clean more and look after [herself] and [her] laundry and had a better attitude about life

3

and. . . . could dance and things like that." Tr. 76-77.  Alton

further testified that during that time she

> was functioning, but in a very small manner.  [She]
> did not go out.  [She] did not have a social life.
> Basic day-to-day things like just getting laundry done
> and dishes done and things [] were [a] big,
> insurmountable pain, like they are now. . . . [she]
> would just sort of exist day-to-day.

Tr. 79.

In August 2005, David Bulmer, M.D., conducted a

consultative psychiatric evaluation.  He noted that "[i]t [was]

clear that [Alton] has been depressed in relation to her

drinking problem but it does not appear that the depression

meets criteria for psychiatric admission."  Tr. 983.  While

rejecting the presence of admission-level depression, Dr. Bulmer

did observe that Alton was "certainly a candidate for outpatient

psychiatric followup."  Id.

Alton's medical records indicate that in August 2005, she

was admitted to Catholic Medical Center complaining of "extreme

fatigue, tiredness, excessive thirst, urination, recent

diagnosis of diabetes," generalized weakness, and difficulty

walking, among other things.  Tr. 979.  In December 2006, Alton

sought alcohol detoxification at Southern New Hampshire Medical

Center.  She had high blood sugar, and complained of pain,

tingling, and numbness in her hands and feet.  Her treating

4

physician opined that it was possible that the tingling and
numbness were caused by "diabetes and/or alcohol."  Tr. 849.

In May 2007, Alton was again hospitalized, this time for
uncontrolled diabetes and alcohol withdrawal.  During this
hospitalization, Alton's treating psychiatrist noted that she
had suffered from clinical depression for years and, during the
previous year, had not been sober for any significant period of
time.

In August 2007, Alton reported "feeling sad, [having] a
depressed mood, feeling low, [] not want[ing] to get out of bed,
lack[ing] motivation, isolation, and [a] history of suicidal
[thoughts]."  Tr. 674.  Alton reported that these symptoms had
become "significantly less severe" since she became sober.  Id.

In April 2008, Alton was admitted to the hospital for
alcohol detoxification.  Her treating physician noted diagnoses
of alcohol abuse and dependence, post-traumatic stress disorder,
major depressive disorder recurrence, type 2 diabetes, and
abnormal liver-function tests.

In May 2008, Alton sought care for her diabetes at the
Nashua Area Health Center from Dr. Heidi Crusberg.  Alton
reported that she had been sober for 21 days and that, before
becoming sober, she had been off insulin treatment for months at
a time.  Dr. Crusberg conducted a mental-status examination and
assessed that Alton had no depression, anxiety, or agitation.

Alton first applied for DIB in August 2009.  Her date last insured, which is relevant to determining her eligibility for DIB benefits,[1] was December 31, 2007.  In her application, she claimed December 31, 2007, as her disability onset date.  Her application was denied, and Alton requested a hearing before an Administrative Law Judge ("ALJ").  On November 15, 2010, ALJ Tanya Garrian held a hearing at which Alton testified.  At that hearing, Alton asked the ALJ to consult with a medical advisor to help him establish her disability onset date.  The ALJ denied Alton's request.

After conducting a hearing, the ALJ issued a decision in which she found Alton's disability onset date to be January 1, 2010.  <u>See</u> Tr. 23.  Regarding the period before that date, the ALJ found that while Alton's impairments were disabling when she was abusing alcohol, <u>see</u> Tr. 16, they were not disabling when she was sober, <u>see</u> Tr. 17.  Based on that finding, the ALJ determined that Alton was not disabled on or before her date last insured and denied her DIB claim.  After Alton's request for review by the Appeals Council was denied, she filed this complaint.

---

[1] A claimant for DIB benefits must establish that she was disabled on or before her date last insured.  <u>See</u> 42 U.S.C. § 423(c); 20 C.F.R. §§ 404.101, 404.131.

**Discussion**

Alton argues that the ALJ: (1) improperly calculated her disability onset date by failing to consult with a medical advisor; (2) improperly evaluated and insufficiently explained the materiality of her substance abuse; and (3) incorrectly evaluated her diabetes when deciding whether that impairment met or medically equaled the severity of one of the impairments listed in the Social Security regulations.  Alton's first argument is persuasive and dispositive.

To be eligible for DIB, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.[2]  42 U.S.C. §§ 423(a)(1)(A)-(D).  More specifically, under the circumstances of this case, a claimant who is no longer insured for DIB benefits must have been under a disability on or before her date last insured to be eligible for DIB.  See 42 U.S.C. § 423(c); 20

---

[2] "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Additionally, when a claimant suffers from alcoholism, the claimant is eligible for DIB only if her limitations would persist at a disabling level were she to stop abusing alcohol. 20 C.F.R. § 404.1535(b); see Alker v. Colvin, No. 13-cv-221-JD, 2014 WL 677866, at *7 (D.N.H. Feb. 20, 2014).

C.F.R. §§ 404.101, 404.131.  The question in this case is whether Alton was disabled on or before December 31, 2007.

The claimant bears the burden of proving that she is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).

However, when a claimant's entitlement to benefits does not depend upon proof of a present disability, but upon proof of a disability that began prior to a date that is distant in time, as is the case here, Social Security Ruling ("SSR") 83-20 imposes an evidentiary requirement upon the ALJ.  That ruling, which is titled "Onset of Disability," states in relevant part:

> [I]n some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred sometime prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.  How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when the onset date must be inferred.

SSR 83-20, 1983 WL 31249, at *3 (Jan. 1, 1983).

"As the court of appeals has observed, SSR 83-20 thus 'require[s] the ALJ to consult a medical advisor' when 'the evidence regarding the date on which [a] claimant's impairment

became severe is ambiguous.'" Rossiter v. Astrue, No. 10-cv-349-JL, 2011 WL 2783997, at *3 (D.N.H. July 15, 2011) (citing May v. SSA Comm'r, 125 F.3d 841 (table), 1997 WL 616196, at *1 (1st Cir. Oct. 7, 1997)).  That is, consultation with a medical advisor is required "in all but the most plain cases," Fischer v. Colvin, No. 13-cv-463-PB, 2014 WL 5502922, at *6 (D.N.H. Oct. 30, 2014) (quoting Bailey v. Chater, 68 F.3d 75, 80 (4th Cir. 1995)), and may be dispensed with only "if the record provides unambiguous evidence that the claimant did not become disabled as of the date last insured," Fischer, 2014 WL 5502922, at *6 (citing May v. Soc. Sec. Admin. Comm'r, No. 97-1367, 1999 WL 616196, at *1-2 (1st Cir. Oct. 7, 1997)).

A claimant's date of disability onset is free from ambiguity only if

> no legitimate basis in the record can support an inference of disability as of the date last insured. . . . Thus, even a record that furnishes only weak support for a claim remains ambiguous, and therefore requires consultation with a medical advisor, if it could support any reasonable inference of disability prior to the date last insured.

Fischer, 2014 WL 5502922, at *6 (quoting Mason v. Apfel, 2 F. Supp. 2d 142, 149 (D. Mass. 1998)).

As an example of a situation in which the onset date was not ambiguous, the court turns to Judge Laplante's decision in Mills v. Astrue, No. 10-cv-279-JL, 2011 WL 2413169 (D.N.H. June 15, 2011).  In that case, the claimant alleged that she was

disabled by knee pain.  However, a review of her medical records
revealed no complaints of any knee pain at all during the five-
year period subsequent to her alleged disability onset date.
Judge Laplante found that the claimant's "medical records [were]
simply not ambiguous as to whether she was disabled from knee
pain," id. at *8, and accordingly, ruled that the ALJ was not
required to consult with a medical advisor when determining the
claimant's date of disability onset.

     In contrast, Judge Laplante found that the claimant's date
of disability onset was ambiguous in Rossiter.  The record in
that case revealed that, for several years, both before and
after the claimant's alleged date of disability onset, the
claimant received intermittent treatment for her allegedly
disabling condition.  See Rossiter, 2011 WL 2783997, at *5-6.
In his decision remanding the case to the ALJ, Judge Laplante
explained that

     SSR 83-20 requires the ALJ to consult with a medical
     advisor in setting the onset date in all but the most
     plain cases. . . . The issue of whether a medical
     advisor is required under SSR 83-20 does not turn on
     whether the ALJ could reasonably have determined that
     the claimant was not disabled as of the claimed onset
     date, but on whether the evidence is ambiguous on that
     point.

Id. at *8 (citations, quotation marks, and brackets omitted).
Finding that the record was ambiguous, Judge Laplante ruled that

the ALJ was required to consult with a medical advisor when determining the claimant's date of disability onset.  Id. at *8.

Here, as in Rossiter, the record does not unambiguously establish that Alton was not disabled as of her last date insured.  Alton was first hospitalized for mental-health issues while she was still in college.  In 2003, she was diagnosed with severe recurrent depression and hospitalized twice.  Laboratory testing for alcohol was negative both times Alton was admitted to the hospital in 2003.  In 2005, a physician noted that it was clear that Alton was depressed "in relation to" her alcohol abuse.  Tr. 983.  In 2007, Alton's treating psychiatrist wrote that she had suffered from clinical depression for years.  In 2008, while Alton was hospitalized, her treating physician noted diagnoses that included: alcohol abuse and dependence, post-traumatic stress disorder, major depressive disorder, and type 2 diabetes, among other things.  All told, Alton was hospitalized for a significant amount of time between 2003 and 2008: she was hospitalized seven times, and her average hospital stay was more than eight days.  Moreover, the court notes that Alton's first hospital admission for mental-health issues predates her alcohol abuse by approximately five years.  Alton's multiple hospitalizations are at least as strong a basis for inferring disability as the "intermittent treatment" in Rossiter.  In sum, there a legitimate basis in the record to support a reasonable

inference that Alton was disabled on or before December 31, 2007.

For this reason, the ALJ committed an error of law by failing to consult with a medical advisor. Accordingly, this case must be remanded.

### Conclusion

For the reasons given, the Acting Commissioner's motion for an order affirming her decision, document no. 14, is denied, and Alton's motion to reverse the decision of the Acting Commissioner, document no. 10, is granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 6, 2015

cc:  T. David Plourde
     Janine Gawryl